East 93rd St Assoc. LP v Walters (2025 NY Slip Op 51763(U))

[*1]

East 93rd St Assoc. LP v Walters

2025 NY Slip Op 51763(U)

Decided on November 3, 2025

Civil Court Of The City Of New York, Kings County

Danescu, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 3, 2025
Civil Court of the City of New York, Kings County

East 93rd St Associates LP, Petitioner,

against
Patricia Walters et al, Respondents.

Index No. 328846-24

Gutman, Mintz, Baker & Sonnenfeldt, P.C. 
813 Jericho Turnpike 
New Hyde Park, New York 11040 
Attorneys for Petitioner 
Brooklyn Legal Services
1709 St. Mark's Ave, 2nd Floor 
Brooklyn, New York 11233 
Attorneys for Respondent Patricia Walters 

Madalina Danescu, J.

After oral argument on October 28, 2025, and upon the foregoing cited papers, the decision and order on this motion is as follows:
FACTUAL AND PROCEDURAL HISTORY
This is a summary nonpayment proceeding by East 93rd St Associates LP ("petitioner") against Patricia Walters et al ("respondent"), seeking possession of 5 East 93rd St., Apt. A916, Brooklyn, NY 11212, ("the subject premises" or "apartment"), for unpaid rental arrears. (see NYSCEF Doc. 1).
By counsel, respondent filed an amended answer alleging, in relevant part, that (i) petitioner is barred from collecting any rent that became due after November 14, 2024 pursuant to MDL § 302-a due to a rent impairing violation in the common areas of the building; and (ii) petitioner has harassed respondent by petitioner's long-term failure and refusal to maintain basic [*2]services and to remediate conditions in need of repair. (see NYSCEF Doc. 7).
Respondent now moves for summary judgment on her MDL § 302-a claim and on her harassment counterclaim.
Respondent alleges the following rent impairing violation exists in the common areas of the building: Violation No. 16958894, a class-B violation issued May 13, 2024 for a leak in the ceiling of the public hallway on the 9th floor. (see NYSCEF Docs. 7 & 19). Respondent states that the rent impairing violation remained open as of the date of her motion, remains open to date, and that common area violations are sufficient pursuant to MDL § 302-a.[FN1]

Further, respondent argues that pursuant to MDL § 302-a petitioner cannot recover rent after 6 months elapsed from when the violation was placed. Here, 6 months from the rent impairing violation was November 13, 2024, so petitioner is barred from collecting rent from November 14, 2024 forward.
Respondent also alleges she has been withholding rent since at least November 2024 to date and deposited the amount of $45,015 (the amount sought in the petition as amended by the June 7, 2025 stipulation) with the clerk of the court. (see NYSCEF Docs. 6, 15 & 22). Finally, respondent alleges she has submitted proof that HPD sent notice of the rent impairing violation, by mail, to petitioner. (see NYSCEF Doc. 21).
Regarding her harassment claim, respondent alleges there are many longstanding open HPD violations in her apartment and in the common areas of the building that petitioner failed or refused to repair, 17 open violations in the common arears and 11 open violations in her apartment at the time of the motion. (see NYSCEF Doc. 19). These open violations and petitioner's continued and long-standing failure to correct them, respondent argues, entitles her to a rebuttable presumption that she is being harassed.
In opposition, petitioner argues that: (i) the rent impairing violation was cured within six months of its issuance; (ii) the majority of the rent sought pre-dates the rent impairing violation; (iii) respondent is attempting to obtain a retroactive abatement for a violation that is not open and was not open for the period respondent alleges; (iv) respondent failed to provide proof of mailing of the rent impairing violation by HPD to petitioner; and (v) respondent failed to provide notice of other conditions in need of repair and to provide access.
Specifically, petitioner alleges that if the violation is corrected, even if it is not removed, MDL § 302-a does not pose a bar to collecting rent. Petitioner claims the rent impairing violation was corrected within six months, although it remains listed as an open violation. 
As to proof that notice of the rent impairing violation was sent by HPD to petitioner by mail, petitioner argues in detail that respondent has not complied with this portion of MDL § 302-a for two reasons. First, because the tracking numbers provided for the bulk HPD mailings identified as being delivered to petitioner show that the two envelopes sent to petitioner are marked as "in transit," not delivered. (see NYSCEF Doc. 23, Ex.1).
Secondly, and more importantly, the bulk packages sent out by HPD, including hundreds of notices of violations to dozens of owners, including only lists of violations and addresses, do not demonstrate that the packages purportedly sent to petitioner contained the specific notice of [*3]violation for the rent impairing violation. In fact, there is no proof of anything contained in said packages. Petitioner argues the affidavits from HPD representatives attesting to mailing practices similarly fail to show proof that the specific notice of violation was mailed to petitioner. Petitioner also denies receiving either of the two packages alleged as mailed by HPD to petitioner in the cycle affidavit containing the rent impairing violation.
The court will not address petitioner's claim that respondent raised the MDL § 302-a in bad faith by claiming she withheld rent prior to November 2024 (when the rent impairing violation ripened). Respondent could have been withholding rent prior to November 2024 in good faith for any of the variety of longstanding violations open in her apartment or building pre-dating the rent impairing violation
Regarding the harassment claim, petitioner alleges respondent is not entitled to summary judgment as petitioner attempted on several occasions to correct the violations but was not provided access, that petitioner never had any intent to cause respondent to vacate her apartment nor did it take actions to cause respondent to vacate.
DISCUSSION
SUMMARY JUDGMENT STANDARD
Summary judgment is a drastic remedy, to be granted only where the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party's meeting of this burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action. (see CPLR § 3212(b); Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]). When deciding a summary judgment motion, the court views the alleged facts, evidence and inferences in the light most favorable to the non-moving party. (see Sosa v. 46th St. Dev. LLC, 101 AD3d 490, 492 [1st Dept 2012]; Rizzo v Lincoln Diner Corp., 215 AD2d 546, 546 [2d Dept 1995]).
Furthermore, the movant must make a prima facie showing of entitlement to judgment as a matter of law by submitting evidence in a form admissible at trial. (see Zuckerman v New York, 49 NY2d 557, 562 [1980]; Torres v Indus. Container, 305 AD2d 136, 136 [1st Dept 2003]). 
The motion must be denied where the moving party fails to demonstrate that there are no material issues of fact, (see Scurry v New York City Hous. Auth., 39 NY3d 443, 457 [2023]; Vega v Restani Const. Corp., 18 NY3d 499, 503 [2012]), "regardless of the sufficiency of the plaintiff's opposition papers." (Matthews v Bright Star Messenger Ctr., LLC, 173 AD3d, 732, 734 [2d Dept 2019]; see also Coastal Sheet Metal Corp. v Martin Assoc., 63 AD3d 617, 618 [1st Dept 2009]; Alvarez v Prospect Hosp., 68 NY2d at 324; Bazdaric v Almah Partners LLC, 41 NY3d 310, 316 [2024]).
Failure to do so requires "denial of its motion, regardless of the claimed insufficiency of plaintiff's opposition." (Coastal Sheet Metal Corp. v Martin Assoc., 63 AD3d 617, 618 [1st Dept 2009]; see also 157 E. 89th St., LLC v McAuliffe, 42 Misc 3d 143(A), *2 [App Term, 1st Dept 2014]; Alvarez v Prospect Hosp., 68 NY2d at 324).
Only when movant has made the required prima facie showing does the burden shift to the non-moving party "to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action." (Alvarez v Prospect Hosp., 68 NY2d at 324). 
SUMMARY JUDGMENT ON THE RENT IMPARING VIOLATION
Pursuant to MDL § 302-a, a rent impairing violation is one that HPD believes constitutes [*4]or will constitute, "a fire hazard or a serious threat to the life, health or safety of occupants thereof." (see MDL § 302-a(2)(a); see also 170 NY Props. LLC v Edwards, 85 Misc 3d 1068, 1074 [Civ Ct, Kings County 2024]). According to HPD, a rent impairing violation is designated in the open violation report with an asterisk (*) symbol after the order number.[FN2]
(see Food First HDFC Inc. v Turner, 69 Misc 3d 1202[A], *2 [Civ Ct, Kings County 2020]).
MDL § 302-a further states that, "[i]f (i) the official records of the department shall note that a rent impairing violation exists in respect to a multiple dwelling and that notice of such violation has been given by the department, by mail, to the owner last registered with the department and (ii) such note of the violation is not cancelled or removed of record within six months after the date of such notice of such violation, then for the period that such violation remains uncorrected after the expiration of said six months, no rent shall be recovered by any owner for any premises in such multiple dwelling used by a resident thereof for human habitation in which the condition constituting such rent impairing violation exists . . . " (see MDL § 302-a(3)(a); see also 170 NY Props. LLC v Edwards, 85 Misc 3d at 1075; 1616 President St. Assoc., LLC v Ackie, 84 Misc 3d 128[A], *1-2 [App Term, 2d Dept 2024])
The 100% prohibition against collecting rents for rent impairing violations which have not been corrected for 6 months after issuance of the violation also applies to violations in common areas of buildings. (see MDL § 302-a(3)(a)(ii) ["If a condition constituting a rent impairing violation exists in the part of a multiple dwelling used in common by the residents or in the part under the control of the owner thereof, the violation shall be deemed to exist in the respective premises of each resident of the multiple dwelling"]; see also 170 NY Props. LLC v Edwards, 85 Misc 3d at 1075; Beverly Holdings NY, LLC v Blackwood, 2025 NY Slip Op 51143[U], *1 [App Term, 2d Dept 2025]).
However, the penalties of subparagraph (3)(a) shall not apply, if, "notwithstanding the notation thereof in the records of the department (ii) the condition which is the subject of the violation has in fact been corrected, though the note thereof in the department has not been removed or cancelled . . . " (see MDL § 302-a(3)(b)).
In order for respondent to succeed on her summary judgment motion, she must prove compliance with all requirements of MDL § 302-a, which contains three elements: "(1) a deposit of the amount due under the original petition, which includes any amendments; (2) existence of a rent impairing violation that has not been certified as corrected within six months of said notice; and (3) proof that the notice of violation for the open rent impairing violation was provided to the owner by DHPD by mail." (170 NY Props. LLC v Edwards, 85 Misc 3d at 1076).
It is undisputed that respondent has met the first prong. The parties agreed $45,015 was the amount owed in June 2025 when the petition was amended by stipulation, and respondent timely deposited said amount with the clerk of the court. (see NYSCEF Docs. 6, 15 & 22).
There is a dispute as to the second element, existence of a rent impairing violation that has not been corrected within six months of notice. While petitioner alleges the condition was corrected, there is no proof of this claim save petitioner's agent's bare-boned allegations of same.
Respondent, on the other hand, shows conclusive proof that the rent impairing violation [*5]was open at the time of her motion as they were listed on the HPD open violations report (see NYSCEF Doc. 20). The law is clear that existence of violations of record is prima facie proof that they continue to exist. (see Dept. of Hous. Preserv. & Dev. v Thomas, 2021 NY Slip Op 32566[U], *4 [Civ Ct, Kings County 2021]; Herclues v Bethel Capital, LLC, 70 Misc 3d 1221[A], *3 [Civ Ct, Bronx County 2021]; DHPD v Living Waters Realty, Inc., 14 Misc 3d 484, 487 [Civ Ct, New York County 2006]; DHPD v De Bona, 101 AD2d 875, 875 [2d Dept 1984]; Dept. of Hous. Preserv. & Dev. v Knoll, 120 Misc 2d 813, 813-814 [App Term, 2d Dept 1983]; see also NYC Admin Code § 27-2115 [f][7]).
In fact, the violation continues to exist to date as it remains on the HPD open violations report.[FN3]
It is axiomatic that "the owner's '[f]ailure to file [a] certification of compliance shall establish a prima facie case that such violation has not been corrected' (Administrative Code of City of NY § 27-2115 [f] [7])," and petitioner here has not rebutted that showing. (Beverly Holdings NY, LLC v Blackwood, 86 Misc 3d 132[A] at*2.)
Regarding the third prong, the court first addresses respondent's argument that the mailing requirement is not a material element of proving an MDL § 302-a defense. (see Sterling 1 LLC v. Mildred Walters et al, Index no. LT 316442/22 (Civ. Ct., Kings County, May 23, 2024, Jimenez, J.). This court respectfully declines to follow Sterling 1 LLC and is persuaded by the reasoning in 170 NY Properties LLC v. Edwards, 85 Misc 3d 1068 (Civ. Ct. Kings 2024).[FN4]

In Sterling 1 LLC, the court appears to have inadvertently conflated an owner's potential defenses to a rent impairing violation under MDL § 302-a with the elements required to prove the existence of a rent impairing violation claim. "Though petitioner is correct that DHPD is to mail notice of rent impairing violations to the owner, this element is not material to proving the MDL § 302-a defense. The defenses to rent impairing violations are limited and are: (i) if the condition did not, in fact, exist; (ii) the condition was, in fact, corrected; (iii) the violation was caused by the resident or someone within the resident's control; or (iv) the resident failed to provide access for the purpose of correcting the violation." (Sterling 1 LLC v. Mildred Walters et al, Index no. LT 316442/22 at Pg. 4).
Although respondent claims the court's decision in 170 NY Properties is a "novel decision that creates out of thin air an element for Ms. Walters to prove Petitioner was 'properly served' with the notices of violation," (see NYSCEF Doc. 24 at pg. 8), this court is entirely unpersuaded by respondent's argument.
Indeed, rather than "creating out of thin air" the requirement that respondent provide proof of the HPD mailing to petitioner, the court's analysis in 170 NY Properties of the required elements of an MDL § 302-a claim is persuasive and, more importantly, correct based on the plain language of the statute.
MDL § 302-a on its face requires that any tenant who raises a defense under this [*6]statute "in any action to recover rent or in any special proceeding for the recovery of possession because of non-payment of rent, the resident must affirmatively plead and prove the material facts under subparagraph a." (see MDL § 302-a(3)(c)). As subparagraph (3)(a) plainly includes the requirement "that notice of such violation has been given by the department, by mail, to the owner," a plain reading of the statute conclusively establishes that respondent is required to prove that HPD mailed the rent impairing notice of violation to petitioner. (see 170 NY Props. LLC v Edwards, 85 Misc 3d at 1075-1076] ["In a nonpayment proceeding, the tenant 'must affirmatively plead and prove the material facts under' Multiple Dwelling Law § 302-a (3) (a) (i)-(ii). (Multiple Dwelling Law § 302-a [3] [c] [emphasis added]").
Had the legislature not intended for tenants to prove the mailing requirement, it would have either stated so, or it would have specifically excluded it from MDL § 302-a(3)(c). Instead, it explicitly incorporated all requirements of MDL § 302-a(3)(a), including proof of mailing.
"The statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning." (DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006] [internal citations and quotations omitted]; see also Cit Bank N.A. v Schiffman, 36 NY3d 550, 559 [2021]; Matter of Alvarez v Annucci, 38 NY3d 974, 975 [2022]).
"[C]ourts should not read words into a statute and courts are not to legislate under the guise of interpretation'." (Matter of Lisa T. v King E.T., 30 NY3d 548, 553 [2017], citing generally to People v Finnegan, 85 NY2d 53, 58 [1995]).
Where the legislature has explicitly included language requiring compliance with MDL § 302-a(3)(a) in MDL § 302-a(3)(c), the court must read these provisions together as requiring tenants seeking to assert the defense of rent impairing violations to prove the mailing requirement.
As the mailing requirement is a material element of pleading and proving an MDL § 302-a defense, the court now moves on to whether respondent has proven this last prong and finds that respondent failed to prove mailing of the rent impairing violation by HPD to petitioner.
The court rejects petitioner's argument that respondent failed to prove mailing because the USPS certified mail tracking numbers for two of the HPD mailings identified as being delivered to petitioner show that the two envelopes sent to petitioner are marked as "in transit," not delivered.
Neither respondent, petitioner, nor HPD controls the postal service. Moreover, the law is clear that "[b]y statute, service is complete upon mailing ( CPLR 2103, subd [b], par 2)," (Engel v Lichterman, 62 NY2d 943, 944-945 [1984]), "regardless of whether or not the party for whom it is intended receives it," (Smith v Lefrak Org., Inc., 96 AD2d 859, 860 [2d Dept 1983]). (see also European American Bank v Abramoff , 201 AD2d 611, 612 [2d Dept 1994]).
In support of the third element, respondent attaches a voluminous set of records subpoenaed from HPD: 71 pages of records so confusing and lacking in specificity that respondent as a matter of law failed to prove that HPD mailed notice of the rent impairing violation to petitioner. (see NYSCEF Doc. 21).
The bulk mailing records respondent attaches are certified HPD records of the same type found insufficient by the court in 170 NY Properties. (170 NY Props. LLC v Edwards, 85 Misc 3d at 1079 ["Respondent's exhibit 13 contains an affidavit from an authorized DHPD representative, Anthony Forde, who avers that DHPD's mailing vendor picks up certain cycles of violations. There is also a 'notice of violation daily cycle job' which states 'job ended successfully' and appears to be in reference to 75 violations. None of the violations are [*7]delineated by violation number or order number."]).
Respondent includes several certificates of bulk mailing, purportedly for all violations mailed out for HPD cycle 699375. (see NYSCEF Doc. 21). There is nothing in the certificates of bulk mailing to indicate that the violation at issue here, Violation No. 16958894, is part of cycle 699375, was included in the bulk mailing, or was mailed to petitioner's address.
There is also an affidavit of mailing, wherein a Kevin Pugh, who identifies himself as the director of FEDCAP, attests to the mailing procedures FEDCAP uses to mail out HPD notices of violation and that FEDCAP is the mailing vendor and authorized agent for such HPD mailings. The affidavit further describes FEDCAP's practices in picking up bulk notices of violation from HPD offices and mailing them out by category. FEDCAP employees, supervised by Mr. Pugh, fill out the mailing receipts, list the cycle numbers and deliver the bulk notices of violation to the post office for mailing. Mr. Pugh attests that these mailing procedures were carried out for cycle 699375 under his supervision. (see NYSCEF Doc. 21).
Nothing in Mr. Pugh's affidavit states that he has personal knowledge of whether Violation No. 16958894 was part of cycle 699375, whether that notice of violation was mailed out, who mailed that notice of violation, or whether it was mailed to petitioner's address.
Next, respondent attaches what appears to be a spreadsheet of the types of violations mailed out for cycle 699375, the number of each type of notice, the price of the postage and "labor cost," the date posted and the name of the person who delivered the category of violation to the post office. (see NYSCEF Doc. 21). Again, nothing therein identifies the specific violation at issue here or provides proof that this violation was mailed to petitioner's address.
Respondent also annexed an affidavit from Andre Forde, an HPD employee who prints notices of violation, and describes HPD's procedures for producing and sending out the notices of violation for mailing to its vendor. The affidavit attests that these procedures were carried out for cycle 699375 under his supervision. (see NYSCEF Doc. 21).
Nothing in Mr. Forde's affidavit states that he has personal knowledge of whether Violation No. 16958894 was part of cycle 699375, whether that notice of violation was mailed out, who mailed that notice of violation, or whether it was mailed to petitioner's address.
Much like in 170 NY Properties, respondent here attaches a 'notice of violation daily cycle job' which states 'job ended successfully' and appears to list 72 violations. "None of the violations are delineated by violation number or order number," (170 NY Props. LLC v Edwards, 85 Misc 3d at 1079) and none contain proof of where the violations were mailed. 
Finally, respondent produces the 33-page certified mail manifest for cycle 699375. The manifest includes the notice of violation ID ("Novid"), certified mailing number, building address, name of the owner/agent, address of the owner/agent and number of violations sent. There appear to be multiple violations to petitioner's registered managing agent at the address listed on the HPD website, Robyn Lucas, 550 Greene Ave, Brooklyn, NY 11216.[FN5]
(see NYSCEF Doc. 21).
The manifest does not list the violation numbers, does not reference Violation No. 16958894, nor do the Nov IDs match the Nov ID for the violation here (Nov ID 9156680).[FN6]
(see [*8]NYSCEF Docs. 20 & 21). In fact, the Nov IDs in the manifest are only two-to-four-digit numbers ranging from "56" to "1163." Taking either the first three or last three digits of the Nov ID for the violation at issue, "915" or "680," the property address, agent name and agent address on the manifest do not match those for the building or petitioner. [FN7]
(see NYSCEF Doc. 21).
As such, there has been no proof connecting Violation No. 16958894 to any of the documents produced by respondent and respondent failed to prove that the notice of violation for Violation No. 16958894 was mailed by HPD to petitioner. (see 170 NY Props. LLC v Edwards, 85 Misc 3d at 1079-1080).
Given the gravity of the consequences of proving an MDL § 302-a defense, a 100% abatement of all rent from November 14, 2024 to date, the significance of adequately proving the mailing requirement cannot be understated. Respondent would not be simply receiving a partial abatement; a successful defense would wipe out a considerable portion of her arrears. As such, the proof must be conclusive; it is insufficient to simply take HPD at its word without a definitive link between the produced mailing records and the actual Violation No. 16958894.
The failure to substantively prove this third element is even more poignant here, in the context of a summary judgment motion where respondent seeks a judgment as a matter of law in her favor, based solely upon the papers in support of her motion. As respondent has been unable to prove the third element of her MDL § 302-a defense at this time, and there is at least an issue of fact as to this prong, summary judgment is denied.
SUMMARY JUDGMENT ON HARASSMENT
Pursuant to the Housing Maintenance Code ('HMC"), "[t]he owner of a dwelling shall not harass any tenants or persons lawfully entitled to occupancy of such dwelling as set forth in paragraph 48 of subdivision a of section 27-2004 of this chapter."
HMC § 27-2004(a)(48) defines harassment as the following, in relevant part:
any act or omission by or on behalf of an owner that (i) causes or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy, and (ii) includes one or more of the following: . . . b-2. repeated failures to correct hazardous or immediately hazardous violations of this code or major or immediately hazardous violations of the New York city construction codes, relating to the dwelling unit or the common areas of the building containing such dwelling unit, within the time required for such corrections; . . . g. other repeated acts or omissions of such significance as to substantially interfere with or disturb the comfort, repose, peace or quiet of any person lawfully entitled to occupancy of such dwelling unit and that cause or are intended to cause such person to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy . . .
A harassment claim must specify facts constituting harassment; it is not enough to state conclusory allegations or merely track the language of the statute. (see Acosta v 202 South 2nd Street LLC, 62 Misc 3d 1209[A], 2019 NY Slip Op 50040[U] [Civ Ct, Kings County 2019]).
Here, respondent alleges that petitioner has harassed her by repeated failure or refusal to correct outstanding violations. "There have been dangerous conditions in my apartment and in my building for many years . . . I've repeatedly reported these conditions to management, and [*9]my landlord has failed to correct them in a timely manner." (see NYSCEF Doc. 17).
Deprivation of an essential service may constitute harassment. (HMC § 27-2004(48)(2)(b); (see Garcia v Adams, 71 Misc 3d 1205[A], *6 [Civ Ct, Kings County 2021]).
Respondent has proven that there are many open violations outstanding in her apartment from 1994, 2011, 2024 and 2025. Existence of violations of record are prima facie proof that they continue to exist. (see Dept. of Hous. Preserv. & Dev. v Thomas, 2021 NY Slip Op 32566[U] at *4; Herclues v Bethel Capital, LLC, 70 Misc 3d 1221[A] at*3; DHPD v Living Waters Realty, Inc., 14 Misc 3d at 487; DHPD v De Bona, 101 AD2d at 875; Dept. of Hous. Preserv. & Dev. v Knoll, 120 Misc 2d at 813-814; see also NYC Admin Code § 27-2115 [f][7]).
If respondent proves a qualifying act or omission, HMC § 27-2004(48) holds, "that there shall be a rebuttable presumption that such acts or omissions were intended to cause such person to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy...." As such, the presumption applies here.
However, there is an issue of fact for trial where petitioner, through its agent, makes sworn statements that "Petitioner has never had any intent to cause Respondent to vacate the
Subject Premises. Nor has Petitioner taken any actions for the purpose of having Respondent do so. Here, not only has Petitioner corrected the rent impairing violation, Petitioner has also sought to effectuate repairs in Respondent's apartment but Respondent has, on numerous occasions, not provided access."
Here, petitioner alleged sufficient facts to create issue of fact for trial as to whether it has rebutted the resumption of harassment. Whether each side can meet its various and shifting burdens of proof at trial, and what the ultimate outcome will be, of course remains to be seen. "The burden of a court in deciding a motion for summary judgment is not to resolve issues of fact or to determine matters of credibility, but merely to determine whether such issues exist." (Dyckman v Barrett, 187 AD2d 553, 554 [2d Dept 1992], citing Barr v. County of Albany, 50 NY2d 247, 254 [1980]). "Where two different conclusions may reasonably be reached from the evidence, a motion for summary judgment should be denied." (S.A. De Obras y Servicios, COPASA v Bank of Nova Scotia, 170 AD3d 468, 472 [1st Dept 2019]).
As such, the motion for summary judgment on the harassment counterclaim is denied.[FN8]

CONCLUSION
Based on the foregoing, it is So Ordered that respondent's motion for summary judgment motion is denied. This proceeding adjourned to November 26, 2025 at 9:30 for transfer to part X for trial.
This constitutes the decision and order of the court. It will be posted on NYSCEF.
Dated: November 3, 2025
Brooklyn, New York 
SO ORDERED,
HON. MADALINA DANESCU
Judge, Housing Part

Footnotes

Footnote 1:It appears that the rent-impairing violation remains open even now, pursuant to the HPD open violations report as of November 3, 2025. (see https://hpdonline.nyc.gov/hpdonline/building/1012097/violations).

Footnote 2:HPD's glossary states that the symbol *, "indicates that the violation is a rent impairing violation, as defined in the Multiple Dwelling Law of the State of New York." See https://hpdsigns.nyc/hpd-online-glossary-reference-book/.

Footnote 3:(see https://hpdonline.nyc.gov/hpdonline/building/1012097/violations).

Footnote 4:While respondent cites to other caselaw in support of her claim that proof of mailing is not a requirement, none of the cites cases stand for that proposition. And the sole binding authority cited, (Beverly Holdings NY, LLC v Blackwood, 86 Misc 3d 132[A] *1 [App Term, 2d Dept 2025]), does not discuss the mailing requirement at all, as it does not appear to have been an issue raised on appeal.

Footnote 5:(see https://hpdonline.nyc.gov/hpdonline/building/1012097/overview).

Footnote 6:(see https://hpdonline.nyc.gov/hpdonline/building/1012097/violations).

Footnote 7:(see https://hpdonline.nyc.gov/hpdonline/building/1012097/overview).

Footnote 8:If respondent had sought summary judgment on her order to correct counterclaim, such motion would have been granted as she showed conclusive proof of outstanding violations and petitioner's claim of failure to provide access is not a defense to an order to correct. (see D'Agostino v Forty-Three E. Equities Corp., 12 Misc 3d 486, 489-490 [Civ Ct, New York County 2006] aff'd on other grounds, 16 Misc 3d 59 [App Term, 1st Dept 2007]; Vargas v 112 Suffolk St. Apt. Corp., 66 Misc 3d 1214[A], *3 [Civ Ct, New York County 2020]; Allen v 219 24th St. LLC, 67 Misc 3d 1212(A), *17 [Civ Ct, New York County 2020]; Morales v Balsam, 69 Misc 3d 1204(A), *1-2 [Civ Ct, Bronx County 2020]).